UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**JOHN KEANE,**

      **Plaintiff,**

vs.                        **Case No.:** 3:16-cv-1595-J-20PDB

**JACKSONVILLE POLICE FIRE AND
PENSION FUND BOARD OF TRUSTEES; and
THE CITY OF JACKSONVILLE**

      **Defendant.**

_____

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, John Keane, brings this action seeking damages, declaratory and injunctive relief against Defendants, the Jacksonville Police Fire and Pension Fund Board of Trustees and the City of Jacksonville, and alleges as follows:

1.     This is an action for damages, declaratory relief, injunctive relief, attorney's fees, and costs for the deprivation of Plaintiffs rights secured by the Fifth and Fourteenth Amendments to the United States Constitution, as well as claims under Florida law.

### JURISDICTION AND VENUE

2.     This Court has jurisdiction pursuant to 42 U.S.C. §§1983 and 1988 and 28 U.S.C. §§1331 and 1343, as to the federal claims herein. This Court has supplemental jurisdiction as to the state law claims pursuant to 28 U.S.C. § 1367.

3.     Venue in this district is proper pursuant to 28 U.S.C. §1391 because the events giving rise to this cause of action occurred in this district and the Defendants reside in this district.

## PARTIES

4.    Plaintiff, John Keane is a resident of Jacksonville, Florida and a citizen of the United States.  Mr. Keane is the retired Executive Director/Administrator of the Board.

5.    Defendant, Jacksonville Police Fire and Pension Fund Board of Trustees ("Board"), is an independent body politic, which operates the Jacksonville Police Fire and Pension Fund ("Fund").  The Board's principal place of business is located in Jacksonville, Florida. At all times relevant, the Board acted under color of state law.

6.    Defendant, the City of Jacksonville ("City"), is a political subdivision of the State of Florida and was at all times material hereto responsible for its agents and employees. At all times material, Defendant City of Jacksonville had the power, right, and duty to train and control its officers, agents, and employees—including those of its Finance Department— to conform with the United States Constitution and Florida law and to ensure that all orders, rules, instructions and regulations it promulgated were consistent with the United States Constitution and Florida Law. At all times relevant, Defendant City of Jacksonville, its agents and employees acted under color of State law.

## FACTUAL ALLEGATIONS

### The Jacksonville Fire and Pension Fund Board of Trustees

7.    The Board is a body politic created by state law. While the Board administers pensions for employees of the Jacksonville Sheriff's Office and Jacksonville Fire and Rescue Department, it is an entity that is wholly independent of the City.

8.    Chapter 175 of the Florida Statutes, known as the Marvin B. Clayton Firefighter Pension Trust Fund Act ("Firefighter's Act"), calls for the creation of pension funds for

firefighters throughout the state of Florida and established a set of minimum standards for firefighter pensions in municipalities and fire control districts throughout the state. The operative provisions of the Firefighter's Act creating such funds states:

> There shall be established a special fund exclusively for the purpose of this chapter, which in the case of chapter plans shall be known as the "Firefighter's Pension Trust Fund", in each municipality and each special fire control district of this state heretofore or hereafter created which now has or which may hereafter have a constituted fire department or an authorized volunteer fire department, or any combination thereof.

Section 175.041(1), Fla. Stat. (2016).

9.     The Firefighter's Act also provides for the creation of independent boards of trustees to administer fire pension funds. Section 175.061(1), Fla. Stat. (2016) states that "in each municipality and in each special fire control district there is hereby created a board of trustees of the firefighter's pension trust fund, which shall be solely responsible for administering the trust fund."

10.     The same section specifies that "[e]ach board of trustees shall be a legal entity with, in addition to other powers and responsibilities contained herein, the power to bring and defend lawsuits of every kind, nature and description." Section 175.061(4), Fla. Stat. (2016).

11.     The Firefighter's Act also states that "[t]he board's action on all claims for retirement under this act shall be final, provided, however, that the rules and regulations have been complied with." Section 175.071(3), Fla. Stat. (2016). Such law further provides that "[t]he sole and exclusive administration of, and the responsibilities for, the proper operation of the firefighters' pension fund and for making effective the provisions of this chapter are vested in the board of trustees...." Section 175.071(5), Fla. Stat. (2016).

3

12.     The Firefighter's Act specifically provides for the independence of the board of trustees from the municipalities in which the pension funds' boards operate: "Each board of trustees shall be independent of the municipality. . . for which it serves as board of trustees to the extent required to accomplish the intent, requirements, and responsibilities provided for in this chapter." Section 175.311, Fla. Stat. (2016).

13.     The Board's independence from the municipality, and more specifically its independence from the Office of General Counsel, also arises from the Firefighter's Act:

> To assist the board in meeting its responsibilities under this chapter, the board, if it so elects, may:
>> (a) Employ independent legal counsel at the pension fund's expense.
>
> . . .
>
> If the board chooses to use the municipality's legal counsel or actuary, or chooses to use any of the municipality's . . . other professional, technical, or other advisers, <u>it must do so only under terms and conditions acceptable to the board</u>.

Section 175.061(7)(a), Fla. Stat. (2016) (emphasis added).

14.     Along similar lines, Chapter 185 of the Florida Statutes, known as the Marvin B. Clayton Police Officers Pension Trust Fund Act ("Police Officer's Act"), creates and regulates pension funds for municipal police officers throughout the state, and specifies standards for the administration of such funds.

15.     Like with fire pension funds, the Police Officer's Act provides for the establishment of independent boards of trustees for the administration of police pension funds. *See* § 185.05(1), Fla. Stat. (2016). The board of trustees is a legal entity with the power to bring and defend lawsuits and is vested with final authority to decide all claims to relief under the board's rules and regulations and pursuant to state law. *See* §§ 185.05(4) and 185.06(1)(d), Fla.

4

Stat. (2016). State law also places sole and exclusive administration for the proper operation of the fund in the board of trustees. *See* § 185.06(4), Fla. Stat. (2016).

16.　　The Police Officer's Act, like the Firefighter's Act, also specifically provides for the Board's independence from the municipality in which it operates: "Each board of trustees shall be independent of each municipality for which it serves as board of trustees to the extent required to accomplish the intent, requirements, and responsibilities provided for in this chapter." Section 185.31, Fla. Stat. (2016). The Police Officer's Act also provides for the Board's legal counsel to be independent from that of the municipality in which it operates. *See* § 185.06(6)(a), Fla. Stat. (2016).

17.　　To implement these provisions, the Florida Legislature, by special act, established the Jacksonville Police and Fire Pension Board of Trustees as an independent agency. Laws of Fla., Ch.90-443, § 2; Laws of Fla., Ch. 92-341, § 1, *codified* in Charter of the City of Jacksonville, Article 22.

18.　　Per the special act of the Florida Legislature, the Board is empowered to:

　　　. . .

　　　(c) Sue and be sued, implead and be impleaded, complain and
　　　defend in all courts,

　　　(d) Enter into contracts, leases or other transactions,

　　　(e) Employ and fix the compensation of an administrator and any
　　　consultants,

　　　(f) Delegate to one or more of its agents or employees such of its
　　　power as it may deem necessary to carry out the purposes of this
　　　article subject always to the supervision and control of the board,
　　　. . .

　　　(k) Determine all questions relating to the administration of the
　　　pension fund in order to promote the uniform administration of the
　　　pension fund and to effectuate its purposes and provisions.

5

(l) Authorize and direct the payment from the pension fund of all expenses and fees incurred in the administration of the pension fund.

. . .

(o) Cause an audit of the affairs of the pension plan to be made annually by an independent certified public accountant, and submit a copy thereof to all interested parties as soon as possible after the end of the fiscal year.

. . .

<u>The foregoing list of expressed powers is not intended to be either complete or exclusive, and the Board shall, in addition, have all such powers as it may reasonably determine to be necessary or appropriate to the performance of its duties under the retirement system.</u> Any decision or judgment of the Board in good faith on any questions arising hereunder in connection with the exercise of its powers shall be final, binding, and conclusive upon all parties concerned.

Charter of the City of Jacksonville, Article 22, § 22.04 (emphasis added).

19.     The special act creating the Board also distinguishes between employees of the

City and employees of the Board:

(a) Any person in the classified civil service of the City of Jacksonville who is appointed to a position in the employ of the board shall be deemed an unclassified employee while in the service of the board and shall serve at the pleasure of the board.

(b) Any such person shall, however, retain his civil service status and be entitled to return to the same civil service classification, rights, status, and job value as held at the time of such appointment.

(c) <u>Any person employed by the board shall be subject to such terms and conditions as shall be set by the board.</u>

Charter of the City of Jacksonville, Article 22, § 22.09 (emphasis added).

20.     Furthermore, the special act also provides that any provisions of the City's charter

that are in conflict with the special act are repealed:

>  All provisions of law in conflict with this article are repealed, except to the extent necessary to give effect to employee rights and benefits preserved as provided in this article. The Jacksonville Police and Fire Pension Board shall continue as an independent agency under the Charter of the City of Jacksonville, without any break in its continuity solely because of the adoption of this article. The members of the board in office on the effective date of this article shall continue in office for the remainder of their respective terms and until their successors shall be appointed as provided in this article.

Charter of the City of Jacksonville, Article 22, § 22.11 (emphasis added).

21.     In addition to the state law provisions expressly recognizing the Board's independence from the City, as a matter of practice, the Board's employees have been treated as legally separate from those of the City throughout the Board's existence. For instance, the Board has a separate employer identification number with the Internal Revenue Service for members of the senior management plan than does the City. The Board also is a contributing employer to Social Security for members of the senior management plan, while the City makes no such contributions for its employees.

22.     The Office of General Counsel of the City of Jacksonville ("General Counsel") has historically taken the position that it could not represent the Board in view of the fact that Chapters 175 and 185 of the Florida Statutes create a present or potential conflict of interest. Furthermore, when addressing the relationship between the City and the Board, the General Counsel has concluded the Board is not the "city" as defined by Section 2.102 of the Ordinance Code, but is indisputably an independent "agency." Thus, senior management employees of the Board are not "city" employees.

23.     As such, the Board is an independent agency from the City, created wholly by state law, that acts as the sole judge of the terms and administration of the Fund, subject only to judicial review.

7

## Plaintiff Keane's Contract with the Board

24.     The Board entered into an initial Employment Contract with Plaintiff, John Keane, effective August 1, 1990. The Board and Plaintiff, John Keane, thereafter entered into a series of contracts renewing Mr. Keane's employment by the Board.

25.     On September 1, 1991, the Board entered into a Financial Services Contract with the City to provide certain specific administrative services for the Board, including the distribution of pension payments as determined by the Board. A copy of the Financial Services Contract is attached hereto as Exhibit 1.

26.     On September 20, 2000, the Board adopted a Senior Staff Voluntary Retirement Plan ("SSVRP"), as a form of compensation for its senior staff members to provide a pension for its senior staff members, several of who were not otherwise eligible to participate in the City's employees' retirement plan. The SSVRP was amended on three occasions after its adoption.

27.     The Board had express legislative authority to create such plans via its powers to enter into contracts and fix the compensation of the Board's administrators. *See* Charter of the City of Jacksonville, Article 22, § 22.04(d), (e).

28.     Like the fire and police pensions that the Board administers, the sole and exclusive administration of the SSVRP is vested in the Board. *See* SSVRP at p.7.

29.     Per the terms of the SSVRP, members of the plan may receive retirement benefits upon attaining age sixty-five (65) with five (5) years of credited service to the Board. *See* SSVRP at p. 8. The plan states that retirement benefits for the members "shall be equal to three (3%) percent of average final compensation for each year of credited service." *Id.* at p. 9. It further states that payments shall be made on a bi-weekly basis.

30.     In addition to the period of credited service, the SSVRP also requires a seven percent (7%) contribution from its members.

31.     On February 12, 2004, Plaintiff John Keane entered into a Restated Employment Contract for Executive Director – Administrator of the Police and Fire Pension Fund Jacksonville, Florida with the Board. The Restated Contract was amended five (5) times thereafter. A copy of the Restated Contract with its amendments ("Restated Contract") is attached hereto as Composite Exhibit 2.

32.     The Restated Contract incorporated the provisions of the SSVRP into Plaintiff Keane's employment agreement with the Restated Contract attaching the SSVRP as Exhibit B. Exhibit 2 at p. 5, ¶ 10.

33.     On June 20, 2003, the City and the Board entered into a Restated Financial Services Contract for the City to provide certain specific administrative services for the Board, including distribution of pension payments as determined by the Board. A copy of the Restated Financial Services Contract is attached hereto as Exhibit 3.

34.     Since the SSVRP's inception, the Board regularly reported its existence, as well as its cost, to the City in the Board's annual budget submissions. Every year the Board would provide to the City its operating budget, specifically listing as a line item "Pension Contributions" corresponding to the SSVRP. Furthermore, the City maintained its own records of contributions to the SSVRP in its Financial and Management Information Systems (FAMIS) database.

35.     Since Plaintiff, John Keane's, participation in the SSVRP, he has made all required contributions and otherwise remained compliant with the plan's requirements for eligibility.

36.     Other senior staff members employed by the Board apart from Plaintiff, John Keane, were also plan participants who either retired and received benefits or died and his survivor began receiving benefits under the SSVRP:

   (a) Donna Walmsley retired from employment with the Board on April 13, 2011 and began receiving benefits in accordance with the SSVRP thereafter; and

   (b) Richard Cohee died on January 6, 2012 while employed by the Board and his survivor, his widow, began receiving benefits in accordance with the terms of the SSVRP thereafter.

37.     On September 25, 2015, Plaintiff Keane's application for retirement was approved by the Board, effective September 30, 2015.

38.     Plaintiff Keane satisfied all conditions precedent necessary to receive retirement benefits under his Restated Contract and the SSVRP, including serving twenty-five years of credited service and making the required employee contributions, and began receiving retirement benefits in accordance with the provisions of the SSVRP effective October 1, 2015.

39.     As of January 1, 2016, following a cost of living adjustment, Plaintiff Keane continued to receive his bi-weekly retirement benefits under the SSVRP.

### The Withdrawal of Plaintiff Keane's Pension Benefits

40.     Even though the Board was created by a special act of the Florida legislature, with the power to enter into contracts and fix compensation for its employees without the City's approval, the City has now contested the legitimacy of SSVRP.

41.     On August 9, 2012, City councilman John Crescimbeni requested that the then General Counsel, Cindy Laquidara, provide an opinion as to the Board's authority to create a pension plan for its administrators.

42.     Pursuant to that request, Ms. Laquidara issued a memorandum suggesting that the Board was not authorized to create the SSVRP under Article 16 of the Charter of the City of Jacksonville.

43.     Ms. Laquidara's memorandum rested largely on a reading of Article 16 of the Charter of the City of Jacksonville, which states that only the City Council is authorized to amend the pension system for City employees.

44.     Article 16 of the Charter of the City of Jacksonville, by its explicit terms, applies to pension plans for <u>City employees</u>. *See* Charter of City of Jacksonville, Article 16, § 16.02. Additionally, when the Florida Legislature created the Board, it repealed all existing laws that were conflict with Article 22, including any provisions in Article 16 that would have conflicted with the powers vested in the Board in Article 22. *See* Charter of the City of Jacksonville, Article 22, § 22.11.

45.     In response to the City's memorandum, the Board sought a legal opinion on the validity of the SSVRP from its counsel, Mr. Robert Klaussner. Mr. Klaussner issued a legal opinion stating that the Board was not subject to Article 16, and had the power to create pension plans for its administrators.

46.     Mr. Klaussner's opinion went largely unchallenged by the City and unquestioned by the Board for almost three years, during which time Plaintiff Keane retired as Executive Director – Administrator and began receiving benefits pursuant to his Restated Contract and the SSVRP.

47.     After Plaintiff, John Keane, retired on September 30, 2015, the City filed a lawsuit on November 20, 2015 against the Board, Plaintiff Keane, and two other SSVRP benefit recipients. *See City of Jacksonville v. Jacksonville Police Fire Pension Board of Trustees, et al,*

11

Case No. 16-2015-CA-007380 (Fla. 4th Cir. Ct. Nov. 20, 2015). The lawsuit sought a

declaratory judgment declaring that the Board lacked authority to establish the SSVRP.

48.     On February 9, 2016, the City enacted an ordinance amending Article 22 of the

Charter of the City of Jacksonville to expressly prohibit the Board from creating or administering

any retirement plan other than the Jacksonville Police and Fire Pension Fund. The ordinance

explicitly referred to the 2012 General Counsel opinion issued by Ms. Laquidara.

49.     On April 20, 2016, General Counsel for the City, Jason Gabriel, issued an

advisory opinion to City Mayor Lenny Curry. The opinion echoed Ms. Laquidara's earlier

position that the Board lacked the authority to create the SSVRP without approval from the City.

The opinion erroneously referred to the Board as a "city agency."

50.     Mr. Gabriel's opinion also heavily relied on Section 7.02 of the Charter of the

City of Jacksonville, which states:

> [a]ny legal opinion rendered by the general counsel shall
> constitute the final authority for the resolution or interpretation of
> any legal issue relative to the entire consolidated government shall
> be considered valid and binding unless and until it is overruled or
> modified by a court of competent jurisdiction or an opinion of the
> attorney general of the State of Florida dealing with a matter of
> solely state law.

Mr. Gabriel contended that his position as General Counsel for the City conferred him with the

authority to issue binding rulings as to the validity of the Board's pension plan for its own

employees.

51.     Notwithstanding Mr. Gabriel's description of his position as "the mortar that

holds the structure of our consolidated government firm," nothing in the Charter of the City of

Jacksonville grants the City's General Counsel the ability to retroactively cancel binding

contracts by fiat, much less do so on behalf of independent agencies, such as the Board, which are not part of the City nor represented by the General Counsel.

52.     On April 21, 2016, one day after Mr. Gabriel rendered his opinion, the City voluntarily dismissed its declaratory judgment lawsuit before the circuit court had a chance to rule on the issue.

53.     On May 9, 2016, Director of Finance and Administration for the City, Michael B. Weinstein, sent Plaintiff, John Keane, a letter, informing him that his benefits under the SSVRP would be terminated. A copy of Mr. Weinstein's letter to Mr. Keane is attached hereto as Exhibit 4. Mr. Weinstein's letter referred to Mr. Gabriel's opinion that the SSVRP was created without legal authority and that, pursuant to Section 7.02 of the City Charter, Mr. Gabriel's opinion was binding on the Board.

54.     The letter also indicated that, rather than receive the bi-weekly payments approved by the Board, Plaintiff, John Keane, would instead receive payments of a lesser amount that he would have been entitled to had he been eligible to participate in the City's General Employee's Retirement Plan.

55.     The Board has failed to make the full pension payments owed to Mr. Keane and failed to take any action to ensure that it complies with its obligations to pay Mr. Keane his entire pension benefit, including enforcement of the terms of the Restated Financial Services Contract between the Board and the City which requires the City to pay the amounts determined by the Board.

56.     Mr. Keane has demanded that the Board and City provide him with his full pension benefit, but the Board and City have failed to do so.

57.     Since May 9, 2016, the Board and City have only issued Plaintiff Keane bi-weekly payments in the amount, calculated by the City's Director of Administration and Finance, Michael B. Weinstein, rather than the full amount to which he is entitled under his employment contract and the SSVRP and approved by the Board.

### COUNT I
### 42 U.S.C. § 1983- FOURTEENTH AMENDMENT
### DENIAL OF PROCDURAL DUE PROCESS
### (The Board)

58.     Paragraph 1 through 57 above are realleged and incorporated by reference herein.

59.     Plaintiff, John Keane, had a property interest in the pension benefits described in the SSVRP, by virtue of Plaintiff's employment contract with the Board. The SSVRP is a voluntary contract plan, which, under Florida law, vested contract rights immediately upon Plaintiff's entry into the contract.

60.     The Board deprived Plaintiff, John Keane, of his property interest in his pension benefits by failing to ensure Plaintiff John Keane received the pension benefits to which he is entitled under the SSVRP and which were approved and authorized by the Board.

61.     Plaintiff, John Keane, was deprived of these benefits without notice or an opportunity to be heard as required by the Fourteenth Amendment of the United States Constitution.

62.     As a direct and proximate result of the Board's actions or inactions, Plaintiff Keane suffered damages, including but not limited to, the monetary loss of earnings to which he was entitled under the plan.

WHEREFORE, Plaintiff John Keane demands judgment against the Board for:

(a)     actual and compensatory damages;

14

(b)     a declaration that the Board had authority to establish the SSVRP and is required

to pay Plaintiff John Keane the amount due him under the SSVRP;

(c)     injunctive relief restoring Plaintiff John Keane's benefits to those which the

Board authorized and agreed under Plaintiff John Keane's Restated Contract and

the SSVRP;

(d)     reasonable costs and attorney's fees; and

(e)     any other relief this Court deems just and proper.

## COUNT II
## 42 U.S.C. § 1983- FOURTEENTH AMENDMENT
## DENIAL OF PROCDURAL DUE PROCESS
### (The City)

63.     Paragraph 1 through 57 above are realleged and incorporated by reference herein.

64.     Plaintiff, John Keane, had a property interest in the pension benefits described in

the SSVRP, by virtue of Plaintiff's employment contract with the Board. The SSVRP is a

voluntary contract plan, which, under Florida law, vested contract rights immediately upon

Plaintiff's entry into the contract.

65.     The City deprived Plaintiff, John Keane, of his property interest in his pension

benefits by cancelling his benefit payments, which Keane was entitled to pursuant to his

employment contract and which the City was required to pay pursuant to its Restated Financial

Services Contract with the Board.

66.     Plaintiff John Keane was deprived of these benefits without notice or an

opportunity to be heard as required by the Fourteenth Amendment of the United States

Constitution.

67.     As a direct and proximate result of the City's actions or inactions, Plaintiff Keane suffered damages, including but not limited to, the monetary loss of earnings to which he was entitled under the plan.

WHEREFORE, Plaintiff John Keane demands judgment against the City for:

(a)     actual and compensatory damages;

(b)     a declaration that the Board had authority to establish the SSVRP and that the City unlawfully revoked Keane's pension benefits under the SSVRP;

(c)     injunctive relief restoring Plaintiff John Keane's benefits to those which the Board authorized and agreed under Plaintiff John Keane's Restated Contract and the SSVRP;

(d)     reasonable costs and attorney's fees; and

(e)     any other relief this Court deems just and proper.

## COUNT III
## 42 U.S.C. § 1983- FIFTH AMENDMENT
## TAKINGS CLAUSE
### (The Board)

68.     Paragraph 1 through 57 above are realleged and incorporated by reference.

69.     Plaintiff, John Keane, had a property interest in the retirement benefits described in the SSVRP, by virtue of Plaintiff's employment contract with the Board. The SSVRP is a voluntary contract plan, which, under Florida law, vested contract rights immediately upon Plaintiff's entry into the contract.

70.     The Board caused a detriment to Plaintiff's property interest by reducing the pension benefits to which he is entitled under the SSVRP and which were approved and authorized by the Board.

16

71.     Plaintiff suffered a negative economic impact because of the Board's action, since he now receives pension benefits that are substantially lower than what he is entitled to under the SSVRP.

72.     Plaintiff's interest in these benefits was more than a mere unilateral expectation or abstract need, as his years of credited service with the Board and 7% contributions to the SSVRP created a reasonable investment-backed expectation in Plaintiff's pension benefits, in addition to the rights created by contract.

73.     The Board's actions in failing to ensure Plaintiff, John Keane, received his full pension benefits are not related to any legitimate public interest, as the benefits were reduced based solely on the erroneous opinion of the City's General Counsel who does not represent the Board, an independent agency, that the Board was not authorized to create pension plans for its employees. Indeed, such opinion was contrary to the Board's own counsel's legal opinion.

74.     Even if the Board's actions advanced a legitimate public interest, Plaintiff, John Keane, did not receive just compensation for the denial of his full pension benefits.

75.     As a direct and proximate result of the Board's actions or inactions, Plaintiff, John Keane, suffered damages, including but not limited to, the monetary loss of earnings to which he was entitled under the plan.

WHEREFORE, Plaintiff John Keane demands judgment against the Board for:

(a)     actual and compensatory damages;

(b)     a declaration that the Board had authority to establish the SSVRP and is required to pay Plaintiff John Keane the amount due him under the SSVRP;

17

(c)      injunctive relief restoring Plaintiff John Keane's benefits to those which the

Board authorized and agreed under Plaintiff John Keane's Restated Contract and

the SSVRP;

(d)      reasonable costs and attorney's fees; and

(e)      any other relief this Court deems just and proper.

## COUNT IV
## STATE LAW CLAIM
## BREACH OF CONTRACT
### (The Board)

76.      Paragraphs 1 through 57 above are realleged and incorporated by reference

herein.

77.      Plaintiff John Keane's Restated Contract of February 12, 2004, which

incorporated by reference the terms of the SSVRP, was a binding contract between Plaintiff,

John Keane, and the Board.

78.      The Board breached the contract by reducing Plaintiff John Keane's benefits

under the SSVRP, after Plaintiff John Keane had performed all necessary conditions precedent to

receive his pension benefits.

79.      Because of the Board's breach, in failing to pay the full pension benefits owed to

Plaintiff, John Keane, under the Restated Contract and SSVRP or enforce the Restated Financial

Services Contract it had with the City to ensure payment of Mr. Keane's benefits, Plaintiff, John

Keane, suffered damages, including but not limited to, the monetary loss of earnings to which he

was entitled to under the plan.

WHEREFORE, Plaintiff John Keane demands judgment against the Board for:

(a)      actual and compensatory damages;

(b)      a declaration that the Board had authority to establish the SSVRP and is required to pay Plaintiff John Keane the amount due him under the SSVRP;

(c)      injunctive relief restoring Plaintiff John Keane's benefits to those which the Board authorized and agreed under Plaintiff John Keane's Restated Contract and the SSVRP;

(d)      reasonable attorney's fees and costs pursuant to §§ 175.061(5) and 185.05(5), Fla. Stat. (2016) and;

(e)      any other relief this Court deems just and proper.

## COUNT V
## STATE LAW CLAIM
## PROMISSORY ESTOPPEL
### (The Board)

80.      Paragraphs 1 through 57 above are realleged and incorporated by reference herein.

81.      The Board represented to Plaintiff, John Keane, that he would receive the full pension benefits to which he is entitled under the SSVRP upon complying with the plan's terms.

82.      This assertion was contrary to the Board's action in failing to provide Plaintiff John Keane with the full pension benefits to which he is entitled.

83.      Plaintiff John Keane reasonably relied on the Board's earlier assertion, particularly in view of the fact that the SSVRP was incorporated into his Restated Contract with the Board.

84.      Plaintiff John Keane suffered a detrimental change in his position because of that reliance, since he remained employed with the Board, made annual contributions to the SSVRP, and decided to retire from the Board, all while laboring under the reasonable belief that he would be paid benefits in accordance with those set forth in the SSVRP.

85.      Because of the Board's change in position, by failing to pay the full pension benefits owed to Plaintiff, John Keane, under the Restated Contract and SSVRP or enforce the

19

Restated Financial Services Contract it had with the City to ensure payment of Mr. Keane's benefits, Plaintiff John Keane suffered damages, including but not limited to, the monetary loss of earnings to which he was entitled to under the plan.

WHEREFORE, Plaintiff John Keane demands judgment against the Board for:

(a)     actual and compensatory damages;

(b)     a declaration that the Board had authority to establish the SSVRP and is required to pay Plaintiff John Keane the amount due him under the SSVRP;

(c)     injunctive relief restoring Plaintiff John Keane's benefits to those which the Board authorized and agreed under Plaintiff John Keane's Restated Contract and the SSVRP;

(d)     reasonable attorney's fees and costs pursuant to §§ 175.061(5) and 185.05(5), Fla. Stat. (2016); and

(e)     any other relief this Court deems just and proper.

### COUNT VI
### STATE LAW CLAIM
### PROMISSORY ESTOPPEL
#### (The City)

86.     Paragraphs 1 through 57 above are realleged and incorporated by reference herein.

87.     The City represented to Plaintiff, John Keane, that he would receive the full pension benefits to which he is entitled under the SSVRP upon complying with the plan's terms by taking no action against the Board following the Plan's creation, following the Board's entry into the Financial Services Contract with the City. The City also represented to Plaintiff that he would receive full pension benefits to which he is entitled under the SSVRP upon complying with the plan's terms by approving the Board's operational budget each year, which included Plaintiff's contribution payments under the SSVRP. The City also had actual knowledge of the SSVRP's

existence from the plan's inception. The contributions for the plan were reported in the Board's annual operating budget, which was submitted to and approved the City. Financial records of the contributions to the SSVRP were also maintained in the City's own FAMIS database. Alternatively, to the extent the City contends that the Board is a subservient agent of the City, the City had actual or constructive knowledge of the SSVRP by virtue of the fact that the City's agents—to wit, the members of the Board—voted to approve the SSVRP at public meetings.

88.     The City's assertions were contrary to the City's later action of cancelling Plaintiff John Keane's benefit payments under the SSVRP, which it was required to pay under Plaintiffs' restated employment contract with the Board pursuant to its Restated Financial Services Contract with the Board.

89.     Plaintiff John Keane reasonably relied on the City's earlier assertion, particularly in view of the fact that the SSVRP was incorporated into his Restated Contract with the Board.

90.     Plaintiff John Keane suffered a detrimental change in his position because of that reliance, since he remained employed with the Board, made annual contributions to the SSVRP, and decided to retire from the Board, all while laboring under the reasonable belief that he would be paid benefits in accordance with those set forth in the SSVRP.

91.     Because of the City's change in position, by failing to pay the full pension benefits owed to Plaintiff, John Keane, under the Restated Contract, SSVRP, and Restated Financial Services Contract, Plaintiff John Keane suffered damages, including but not limited to, the monetary loss of earnings to which he was entitled to under the plan.

WHEREFORE, Plaintiff John Keane demands judgment against the Board for:

(a)     actual and compensatory damages;

(b)     a declaration that the Board had authority to establish the SSVRP and that the

City unlawfully revoked Keane's pension benefits under the SSVRP;

(c)     injunctive relief restoring Plaintiff John Keane's benefits to those which the

Board authorized and agreed under Plaintiff John Keane's Restated Contract and

the SSVRP;

(d)     reasonable attorney's fees and costs pursuant to §§ 175.061(5) and 185.05(5), Fla.

Stat. (2016); and

(e)     any other relief this Court deems just and proper.

**COUNT VII**
**STATE LAW CLAIM**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP**
**(The City)**

92.     Paragraphs 1 through 57 above are realleged and incorporated by reference herein.

93.     The City was aware of the existence of Plaintiff, John Keane's, restated employment

contract with the Board, as well as the provisions of the contract establishing Plaintiffs' right to benefits

under the SSVRP. The City was made aware of the SSVRP at the time of its creation, as the Board and

its staff informed numerous City officials, including the City's council auditor, of the SSVRP's

existence, submitted records of contributions to the SSVRP in its operating budget submissions to the

City, and submitted journal entries of SSVRP contributions in the City's FAMIS database. Furthermore,

the City was also aware of the contract at least by 2012, when General Counsel Cindy Laquidera,

Esquire drafted a memorandum on the legality of the SSVRP's creation. Furthermore, the City was also

aware of the SSVRP's existence at the time it initiated legal action against the Board seeking, inter alia,

an injunction to terminate the SSVRP.

94.     The City intentionally procured the breach of Plaintiff, John Keane's, contract with the

Board by cancelling payment of his pension benefits under the SSVRP, to which he was entitled under

22

his restated employment contract with the Board and to which the City was obligated to pay Plaintiff under its Restated Financial Services Contract with the Board.

95.     The City's actions of cancelling Plaintiff, John Keane's, pension benefits were taken in the absence of any justification or privilege.

96.     The City's actions caused Plaintiff, John Keane, to suffer damages, including but not limited to, the monetary loss of earnings to which he was entitled to under the plan.

WHEREFORE, Plaintiff John Keane demands judgment against the City for:

(a)     actual and compensatory damages;

(b)     a declaration that the Board had authority to establish the SSVRP and that the City unlawfully revoked Keane's pension benefits under the SSVRP;

(c)     injunctive relief restoring Plaintiff John Keane's benefits to those which the Board authorized and agreed under Plaintiff John Keane's Restated Contract and the SSVRP;

(d)     reasonable attorney's fees and costs pursuant to §§ 175.061(5) and 185.05(5), Fla. Stat. (2016); and

(e)     any other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff John Keane hereby demands trial by jury on all issues so triable.

DATED this _____ day of January, 2018.

Respectfully submitted,

_____

Wm. J. Sheppard, Esquire
Florida Bar No.: 109154
Elizabeth L. White, Esquire
Florida Bar No.: 314560
Matthew R. Kachergus, Esquire
Florida Bar No.: 503282
Bryan E. DeMaggio, Esquire
Florida Bar No.: 055712
Jesse B. Wilkison, Esquire
Florida Bar No.: 118505
Sheppard, White, Kachergus & DeMaggio, P.A.
215 Washington Street
Jacksonville, Florida 32202
Telephone:       (904) 356-9661
Facsimile:       (904) 356-9667
Email:              sheplaw@sheppardwhite.com
COUNSEL FOR PLAINTIFF

lr[keane.john.complaint]